1   MARSHA JONES MOUTRIE, City Attorney
    JEANETTE SCHACHTNER, Deputy City Attorney
2   Bar No. 116671
    jeanette.schachtner@smgov.net
3   ANTHONY P. SERRITELLA, Deputy City Attorney
    Bar No. 72597
4   anthony.serritella@smgov.net
    1685 Main Street, Room 310
5   Santa Monica, California 90401
    Telephone: (310) 458-8361
6   Facsimile:  (310) 451-5862

7   Attorneys for Defendants,
    CITY OF SANTA MONICA,
8   SANTA MONICA POLICE DEPARTMENT,
    PETER ZAMFIROV, RUSSELL GRIMMOND,
9   LESLIE TRAPNELL, and LLOYD GLADDEN

10              **UNITED STATES DISTRICT COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

12  MICHAEL N. JONES, an individual; JILL        CASE NO.: CV 11-02851 SJO (JCGX)
    JONES, an individual; and G.J., an
13  individual,                                  (*Assigned to Honorable S. James Otero,
                                                 Courtroom 1*)
14             Plaintiffs,
                                                 **NOTICE OF MOTION AND**
15      v.                                       **MOTION TO DISMISS AND**
                                                 **MOTION TO STRIKE BY**
16  COUNTY OF LOS ANGELES; LOS                   **DEFENDANTS ZAMFIROV,**
    ANGELES COUNTY DEPARTMENT OF                 **GRIMMOND, TRAPNELL AND**
17  CHILDREN AND FAMILY SERVICES;                **GLADDEN; MEMORANDUM OF**
    THE OFFICE OF COUNTY COUNSEL                 **POINTS AND AUTHORITIES IN**
18  FOR LOS ANGELES COUNTY; CITY OF              **SUPPORT THEREOF**
    SANTA MONICA; CITY OF SANTA
19  MONICA POLICE DEPARTMENT;                    **Fed.R.Civ.P.12(b)(6) and 12(f)(2)**
    CLAUDIA WANG, an individual; SHAWN
20  RIVAS, an individual; DEBORAH                DATE:      July 11, 2011
    RAMIREZ, an individual; YOLANDA              TIME:      10:00 a.m.
21  JOHNSON, an individual; SUSAN LAND,          CRTRM.:    1
    an individual; AMIR PICHVAI, an
22  individual; PETER ZAMFIROV, an               Complaint Filed: April 5, 2011
    individual;  RUSSEL GRIMMOND, an
23  individual; LESLIE TRAPNELL, an              Trial Date:  None
    individual; and LLOYD GLADDEN, an
24  individual,                                  *Per Local Rule 7-3, counsel met and
                                                 conferred on May 31, 2011*
25             Defendants.

26          PLEASE TAKE NOTICE that on July 11, 2011 at 10:00 a.m., or as soon

27  thereafter as this matter may be heard in Courtroom 1 of the above-entitled court

28  located at 312 N. Spring Street, Los Angeles, CA 90012, Defendants Zamfirov,

1  Grimmond, Trapnell and Gladden will and hereby move the Court for dismissal of

2  Plaintiffs' Complaint, and each cause of action against them, on the grounds that the

3  Complaint fails to state a claim upon which relief can be granted.

4      In addition, Defendants Zamfirov, Grimmond, Trapnell and Gladden will and

5  hereby move the Court for an Order to Strike Plaintiffs' prayer for punitive damages

6  from the Complaint against them because plaintiffs have failed to state sufficient facts

7  to support punitive damages against them.

8      This motion is based upon this Notice of Motion and Motion, and the

9  accompanying Memorandum of Points and Authorities, all pleadings and papers on

10  file in this action, and upon such other matters as may be presented to the Court at the

11  time of the hearing.

12      Pursuant to Local Rule 7-3, on May 26, 2011, defendants' counsel sent

13  plaintiffs' counsel a meet and confer letter regarding the substance of this motion, and

14  on May 31, 2001, counsel for the parties met and conferred by telephone.

15  DATE: June 6, 2011                    Respectfully submitted,

16

17                                MARSHA JONES MOUTRIE
                              City Attorney

18

19                                *s/ Jeanette Schachtner*
                              By:_____

20                                JEANETTE SCHACHTNER
                              Deputy City Attorney

21                                Attorneys for Defendants,
                              CITY OF SANTA MONICA, SANTA

22                                MONICA POLICE DEPARTMENT,
                              ZAMFIROV, GRIMMOND, TRAPNELL,

23                                AND GLADDEN

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

I.      Introduction. ...................................................................................................... 1

II.     Statement Of Alleged Facts.............................................................................. 3

III.    General Authority For A Motion To Dismiss And Motion To Strike. ............... 6

IV.     G.J., A Minor, Lacks Standing To Sue In His Own Name.................................. 7

V.      The First, Fifth And Tenth Causes Of Action By G.J. Against Officers
        Grimmond And Zamfirov For False Imprisonment, Violation Of The
        Fourth Amendment And Violation Of The State Constitutional Right To
        Be Free From Unreasonable Seizure, Respectively, Fail To State Claims
        For Relief.......................................................................................................... 8

        A. ...... G.J.'s Claims For False Imprisonment And His State Constitutional Right
        To Be Free From Unreasonable Seizure Require The Same Elements And
        Neither Claim States A Viable Cause Of Action. ............................................. 8

        B......... G.J.'s Fourth Amendment § 1983 Claim For Unlawful Seizure Also Fails
        To State A Viable Claim. ................................................................................... 9

VI.     The Second Cause Of Action Against Officers Grimmond And Zamfirov
        Does Not Support A Claim For Intentional Infliction Of Emotional
        Distress. ......................................................................................................... 12

VII.    The Third Cause Of Action For Negligence Against Officers Grimmond
        And Zamfirov Fails To State A Viable Claim Because Plaintiffs Fail To
        Identify Any Legal Duty Or Breach Of Duty By The Officers Towards
        Plaintiffs. ....................................................................................................... 13

        A. The Complaint Fails To Establish The Existence Of A Duty Between The Officer

        B. Even If A Duty And Breach Of Duty Is Properly Pled, The Officers Are Immune

VIII.   The Sixth Cause Of Action Against Officers Grimmond And Zamfirov
        Does Not State A Claim For A Violation Of Fourteenth Amendment
        Substantive Due Process Right To Familial Association, Nor Does The
        Eleventh Cause Of Action Under The State Constitution State A Claim.......... 15

IX.     Plaintiff Jill Jones' Seventh And Eighth Causes Of Action Fail To State A
        Viable Claim For Alleged "Coercive Interrogation." ....................................... 17

X.    The Thirteenth Cause Of Action Against Officers Grimmond And Zamfirov Brought Under Civil Code § 43 Does Not Allege Facts Sufficient To State A Claim. .............................................................. 17

XI.   The Officers Are Entitled To Qualified Immunity – Plaintiffs' Allegations Do Not Establish That The Officers Should Have Known That Their Conduct Could Constitute A "Seizure" Of G.J., That Their Interview Of Jill Jones Was "Coercive" And Required *Miranda* Warnings, Or That Their Conduct Violated The Plaintiffs' Substantive Due Process Rights To Familial Association. ..................................................................... 18

CONCLUSION............................................................................................. 20

**Cases**

*Alejo v. City of Alhambra* (1999)
75 Cal. App. 4th 1180, 89 Cal. Rptr.2d 768, 771-72 ................................................ 17

*Arcilla v. Adidas Promotional Retail Operations*, Inc.,
488 F.Supp. 965 (C.D. Cal. 2007) ............................................................................ 22

*Asgari v. City of Los Angeles*,
15 Cal.4th 744 (1997) ................................................................................................ 9

*Ashcroft v. al-Kidd*,
563 U.S___(2011) .................................................................................................... 21

*Ashcroft. v. Iqbal*,
__U.S. __, 129 S.Ct. 1937, (2009) ........................................................................... 7

*Baker v. McCollan*,
443 U.S. 137 (1979) ................................................................................................. 11

*Balistreri v. Pacifica Police Department*,
901 F. 2d 696 (9th Cir. 1988) ..................................................................................... 6

*Beck v. Ohio*,
379 U.S. 89 (1964) .............................................................................................. 11, 12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................ 6, 7

*Beltran v. Santa Clara County*,
514 906 (9th Cir. 2008) ............................................................................................ 20

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996) ....................................................................................... 22

*Christensen v. Superior Court*,
54 Cal.3d 868 (1991) ................................................................................................ 13

*Cummiskey v. Superior Court*
3 Cal. 4th 1018 (1992) ........................................................................................ 11, 12

*Doe v. Lebbos*,
348 F.3d 820, (9th Cir. 2003) ................................................................................... 20

*Graham v. Connor*,
490 U.S. 386 (1989) ................................................................................................. 18

*Harlow v. Fitzgerald*,
457 U.S. 800, (1982) ................................................................................................ 21

*Hunter v. Bryant* ,
502 U.S. 224 (1991) ................................................................................................. 22

*Johns v. County of San Diego*,
114 F.3d. 874 (9th Cir. 1997) ..................................................................................... 8

*McMahon v. Albany Unified School Dist.*
104 Cal. App. 4th 1275 (2002) .................................................................. 9

*Michigan v. De Fillipo,*
443 U.S. 31 (1979) ...................................................................................... 11

*Molko v. Holy Spirit Assn.,*
46 Cal.3d 1092, (1988) ................................................................................ 9

*Orin v. Barclay,*
272 F.3d 1207, (9th Cir.2001) ............................................................... 11, 12

*People v. Lashley,*
1 Cal.App.4[th] 938 .................................................................................... 19

*Rochin v. California,*
342 U.S. 165 (1952) .................................................................................... 18

*Rowland v. Christian* (1968)
69 Cal.2d 108, 70 Cal.Rptr. 97 .................................................................. 15

*Saucier v. Katz,*
533 U.S. 194, (2001) ................................................................................... 21

*United States v. Lopez,*
482 F.3d 1067, (9th Cir. 2007) ................................................................... 12

*United States v. Smith,*
790 F.2d 789 (9th Cir.1986) ................................................................. 10, 12

*Wallis v. Spencer,*
202 F.3d 1126 (9th Cir. 1999) .................................................................... 17

**Statutes**

Cal. Fam. Code §§ 6500, 6601 ..................................................................... 7

Cal. Welfare & Institutions Code section 305 ............................................ 18

Cal. Civil Code § 1714 ................................................................................ 14

Cal. Civil Code § 43 .......................................................................... 2, 17, 18

Cal. Government Code § 820.4 .................................................................... 15

Cal. Government Code § 820.8 .............................................................. 14, 15

42 U.S.C. § 1983 .................................................................................... 9, 17

**Rules**

F.R.Civ.P. Rule 17(b) .................................................................................... 7

F.R.Civ.P. Rule 17(c) .................................................................................... 7

F.R.Civ.P. Rule 12(f)....................................................................................................20

NOTICE OF MOTION AND MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction.

Plaintiffs Michael and Jill Jones allege that the Los Angeles County Department of Family and Child Service (DCFS) wrongfully removed their nearly three-month-old son G.J. from their custody after Ms. Jones fell down the stairs while carrying her son.  Although Plaintiffs' 56 page complaint, with its 209 paragraphs alleges compelling facts, even if true, the allegations against Santa Monica Police Officers Grimmond, Zamfirov, Trapnell and Gladden fail to state a claim upon which relief can be granted, and fail to show entitlement to seek punitive damages from them.

Suspecting G.J.'s injuries did not result from a fall, but rather from child abuse, UCLA hospital staff reported the matter to the Santa Monica Police Department and DCSF.  Santa Monica police investigated and found no grounds to detain G.J. or Ms. Jones. (Complaint, ¶¶ 77 & 91)  UCLA and DCSF staff concluded otherwise, and ultimately DCSF placed a "hospital hold" on G.J.  (¶101-105)

Despite the officers' minor role in the events which led to the hospital hold, plaintiffs allege ten (10) causes of action for alleged deprivations of Federal rights and State torts against the police officer defendants.  All of the claims are predicated on the same set of general facts, to wit – Officers Grimmond and Zamfirov told Mr. and Ms. Jones that if they did not agree to admit G.J. into the hospital as ordered by Dr. Wang, DCFS would "likely" remove G.J. from their custody.  In addition, Officers Grimmond and Zamfirov "escorted" G.J. and his parents to the emergency room, which furthered the parents' belief that they had no choice but to comply with Dr. Wang's demand that G.J. be hospitalized.  Plaintiff Jill Jones also asserts that Officers Trapnell and Gladden while at the hospital, conducted a custodial "coercive interrogation," allowed Dr. Wang to participate and ask "confrontational" questions, failed to provide "*Miranda*" warnings and failed to inform her of her "right to counsel."

Because these allegations, even if true, do not state a viable claim against the

defendants, dismissal of the following causes of action is proper:

1. G.J.'s First Cause of Action against Officers Grimmond and Zamfirov and the City of Santa Monica for False Imprisonment.

2. Plaintiffs' Second Cause of Action against Officers Grimmond and Zamfirov for Intentional Infliction of Emotional Distress.

3. Plaintiffs' Third Cause of Action for Negligence against Officers Grimmond and Zamfirov.

4. G.J.'s Fifth Cause of Action against Officers Grimmond and Zamfirov for Section 1983 violation of the Fourth Amendment.

5. Plaintiffs' Sixth Cause of Action against Officers Grimmond and Zamfirov for Section 1983 violation of the Fourteenth Amendment.

6. Plaintiff Jill Jones' Seventh Cause of Action against Officers Trapnell and Gladden for alleged "coercive interrogation" under the U.S. Constitution.

7. Plaintiff Jill Jones' Eighth Cause of Action against Officers Trapnell and Gladden for alleged "coercive interrogation" under the California Constitution.

8. G.J.'s Tenth Cause of Action against Grimmond and Zamfirov for alleged violation of his State Constitutional Right to be free from Unreasonable Search and Seizure.

9. Plaintiffs' Eleventh Cause of Action against Grimmond and Zamfirov for alleged violation of the Right of Familial Association under the California Constitution.

10. Plaintiffs' Thirteenth Cause of Action against Grimmond and Zamfirov for alleged violation of Civil Code § 43.

Finally, the prayer for punitive damages against the police officer defendants should be stricken because plaintiffs fail to state sufficient facts to support a claim for punitive damages.

## II.   Statement Of Alleged Facts.[1]

Plaintiffs Michael and Jill Jones are attorneys and Ms. Jones, at the time of the subject events, was employed in the social services division of County Council for the County of Los Angeles. (¶ 32)  On February 24, 2010, plaintiff Jill Jones fell down the stairs of her home while carrying G.J, her nearly three-month-old son.  Ms. Jones immediately rushed G.J. to the UCLA-Santa Monica emergency room, where he was diagnosed with a parieto-occipital skull fracture with a possible hematoma, or bleeding underneath the fracture. (¶¶ 1, 42, 46)  UCLA-Santa Monica staff reported the incident to the Department of Child and Family Services (DCFS). (¶ 47)  G.J. was transferred to UCLA-Westwood due to the severity of the fracture. (¶ 45, 49)  Two days later, on February 26, 2010, G.J. was discharged.  Before leaving the hospital, Ms. Jones noticed a popping sound coming from G.J.'s chest, which she reported to hospital staff. (¶¶53 and 54)  G.J. was examined and released nonetheless. (¶55)  The following Monday, on March 1, 2010, Ms. Jones took G.J. to his pediatrician for follow-up and again reported the popping sounds.  The pediatrician prescribed Tylenol. (¶ 57)

On March 4, 2010, the Suspected Child Abuse and Negligence (SCAN) team at UCLA-Westwood discussed G.J.'s injuries based upon a referral from a child-life specialist at the hospital. (¶ 58)  Dr. Claudia Wang, the SCAN team medical director, began to suspect that G.J.'s injuries were not accidental. (¶ 59)  Dr. Wang contacted Ms. Jones and asked that she take G.J. to the hospital for additional routine testing.  Ms. Jones hoped the tests would explain the popping signs, and therefore she complied. (¶ 63)

The following day, on March 5, 2009, G.J. underwent eye testing at UCLA's Jules Stein Eye clinic to determine whether symptoms of "Shaken Baby Syndrome"

---

[1] As they must, Defendants accept the Jones' recitation of facts as true for purposes of this motion to dismiss.

were present.  (¶¶ 60 and 64)  The tests were negative.  (¶ 64)  Thereafter, G.J. underwent a full skeletal x-ray examination.  (¶ 65)  The x-rays revealed bilateral, symmetrical, lateral posterior rib fractures.  (¶ 67)  Dr. Wang asked one of the radiologists to compare the March 5, 2009 x-ray films to those taken on the day of the accident.  (¶ 68)  The radiologist concluded that the right rib fractures could have been caused during the initial fall, but the displaced left rib fractures were new.  (¶ 68)

Dr. Wang interviewed Ms. Jones, who did not have a clear recollection of how she had fallen or where G.J. hit the step.  Although Dr. Wang did not inform Ms. Jones she suspected G.J. was a victim of child abuse, after the interview, Ms. Jones grew suspicious of Dr. Wang's motives for examining G.J. and questioning Ms. Jones. (¶¶ 70, 71)

Thereafter, SMPD was contacted and received a report that G.J. "was a victim of child abuse."  (¶ 72)  Officers Grimmond and Zamfirov were assigned to investigate and responded to the hospital.  (¶ 73)  According to plaintiffs' complaint, Dr. Wang told the defendant officers that she was certain the ribs on the left were not fractured during the previous visit to the hospital.  (¶ 73)  The officers interviewed Ms. Jones.  (¶ 76)  The officers did not tell her she was the subject of a child abuse investigation or that she had a "right to counsel" before they spoke to her.[2]  (¶ 74)  At one point during the interview, Dr. Wang entered the room and "challenged" Ms. Jones' account of how she bruised her arm.  The officers also permitted Dr. Wang to "interrogate" Ms. Jones about what had happened.  (¶ 75)  After interviewing Ms. Jones, as well as Mr. Jones, the officers concluded there were no grounds to arrest Ms. Jones or to take G.J. into protective custody.  (¶ 77)

In the meantime, Dr. Wang, or someone at her direction, reported the matter to DCFS.  (¶ 78)  Upon learning that the Santa Monica officers would not take G.J. into protective custody, Dr. Wang ordered additional testing as a ruse to keep G.J. at the

---

[2] As discussed below, the officers were not legally obligated to do so.

4

**NOTICE OF MOTION AND MOTION TO DISMISS**

hospital until DCFS' arrival. (¶ 79-83)  The Joneses acquiesced to the additional testing, although allegedly under "duress."  They only agreed to the testing because Dr. Wang told them the tests were urgent and necessary, and the officers "suggested" that the Joneses permit the tests.  In addition, because the officers "escorted" them to the emergency room with Dr. Wang's assistant, plaintiffs felt obligated to comply.  (¶ 83)  Once at the emergency room, officers Grimmond and Zamfirov left the hospital and the matter was referred to SMPD detectives for further investigation.  (¶ 84)

After G.J. was admitted to the hospital, the Joneses demanded to speak to a physician to inquire whether they could take G.J. home.  The physician told them that only Dr. Wang could provide such clearance.  (¶ 85)  Later that evening, DCFS social worker Rivas arrived to investigate and convinced the Joneses to follow Doctor Wang's medical instructions or G.J. would be detained.  (¶ 86-94)

The following morning, on March 6, 2010, G.J. was transferred back to UCLA-Santa Monica (¶ 95) where Ms. Jones was told she was suspected of physically abusing her son. (¶ 96)  Hospital staff placed an alarm bracelet around G.J.'s ankle. (¶ 97)  Although the Joneses wanted to take G.J. home, they were told and believed that if they did not comply with hospital staff instructions, they would be viewed as refusing medical treatment and DCFS would remove G.J. from their custody. (¶ 98)  On March 7, 2010, DCFS issued a hospital hold on G.J.  (¶¶ 99-102)

G.J. remained hospitalized for the next few days while DCFS determined whether G.J.'s hospital hold should be removed or remain.  (103-114)

On March 10, 2010, five days after the Joneses contact with officers Grimmond and Zamfirov, Santa Monica Detectives Trapnell and Gladden arrived at the hospital for further investigation. (¶115)  They spoke with Dr. Wang, who allegedly "misled" the detectives regarding the nature of G.J.'s injuries in an attempt to have criminal charges pressed against Jill and Michael.  (¶ 116)  Dr. Wang advised the officers that there were two skull fractures that did not appear related and occurred at two different times or as a result of two different hits to the head. (¶ 116)  Detectives Trapnell and

1 Gladden interviewed Ms. Jones who believed she was compelled to answer the

2 detectives' questions in order to remove DCFS' hospital hold on G.J. (¶ 117)  Ms.

3 Jones was interviewed at the hospital for about an hour and a half in Dr. Wang's

4 presence, and Dr. Wang was permitted to ask questions, including "accusatory" and

5 "confrontational" questions.  Ms. Jones was never given her "*Miranda*" rights or told

6 she had the right to counsel.[3]  (¶¶ 118, 119)

7     A detention hearing, writ proceedings and trial ensued, and on May 3, 2010,

8 G.J. was returned to his parents' custody.  (¶ 121-133)   The defendant police officers

9 apparently were not involved in any aspect of the court proceedings as the complaint

10 contains no further allegations against them.  (See ¶¶ 121-133)

11     **III.     General Authority For A Motion To Dismiss And Motion To Strike.**

12     A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the

13 complaint.  Dismissal is proper where there is either a "lack of a cognizable legal

14 theory" or "the absence of sufficient facts alleged under a cognizable legal theory."

15 *Balistreri v. Pacifica Police Department*, 901 F. 2d 696, 699 (9th Cir. 1988).

16     To survive a motion to dismiss, a complaint must assert more than "naked

17 assertions," "labels and conclusions" or "a formulaic recitation of the elements of a

18 cause of action."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-557 (2007).  The

19 tenet that a court must accept as true all of the allegations contained in a complaint is

20 inapplicable to legal conclusions.  "[T]hreadbear recitals of the elements of a cause of

21 action, supported by mere conclusory statements do not suffice." *Id.* at 555, quoted in

22 *Ashcroft v. Iqbal*, __U.S. __, 129 S.Ct. 1937, 1949 (2009).  In addition, a plaintiff

23 must also demonstrate that a claim is "plausible on its face."  *Bell Atlantic Corp. v.*

24 *Twombly*, 550 U.S. at 570.  As the Court explained, "[a] claim has facial plausibility

25 when the plaintiff pleads factual content that allows the court to draw the reasonable

26

27 _____

28     [3] As discussed below, Ms. Jones was not in "custody, was not entitled to *Miranda* warnings, and did not have a "right to counsel."

1  inference that the defendant is liable for the misconduct alleged." *Id.* at 556; *Ashcroft*

2  *v. Iqbal*, 129 S.Ct. at 1949. The plausibility standard is not akin to a "probability

3  requirement," but it asks for more than a sheer possibility that a defendant has acted

4  unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a

5  defendant's liability, it "stops short of the line between possibility and plausibility of

6  'entitlement to relief.' " *Id.,* at 557, 127 S.Ct. 1955 (brackets omitted); *Ashcroft v.*

7  *Iqbal*, 129 S.Ct. at 1949. Finally, "[w]hile legal conclusions can provide the

8  framework of a complaint, they must be supported by factual allegations." *Ashcroft v.*

9  *Iqbal*, 129 S.Ct. at 1949.

10      As discussed below, while plaintiffs' complaint "concludes" that the defendant

11  police officers violated their Federal and State Constitutional rights and committed

12  various torts, the factual allegations are insufficient to allow the court to draw a

13  reasonable interference that the defendant officers are liable for the misconduct

14  alleged against them.

15      Under Federal Rule of Civil Procedure § 12(f), the court may strike from a

16  pleading ... any redundant, immaterial, impertinent, or scandalous matter. Plaintiffs'

17  prayer for punitive damages is immaterial and impertinent because plaintiffs have

18  failed to state sufficient facts to support punitive damages.

19  **IV.   G.J., A Minor, Lacks Standing To Sue In His Own Name.**

20      Whether a person has the capacity to bring suit in federal court is determined by

21  the law where the person is domiciled. F.R.C.P. Rule 17(b). *Johns v. County of San*

22  *Diego*, 114 F.3d. 874, 877 (9th Cir. 1997). Under California law "a minor may enforce

23  the minor's rights by civil action or other legal proceedings in the same manner as an

24  adult, except that a guardian must conduct the action or proceedings." Cal. Fam. Code

25  §§ 6500, 6601. Therefore, in federal courts in California, minors lack the capacity to

26  bring suit and must be represented by a guardian ad litem. F.R.C.P. Rule 17(c);

27  *Johns*, 114 F.3d. at 877.

28      Here, there is no allegation that a guardian ad litem, or other representative

7

**NOTICE OF MOTION AND MOTION TO DISMISS**

1   fiduciary, has been appointed to sue on behalf of the minor.  (See Complaint ¶ 14

2   which contains no allegation of representative capacity.)  Consequently, at this point,

3   neither G.J., nor his parents have standing to assert G.J.'s claims.

4     **V. The First, Fifth And Tenth Causes Of Action By G.J. Against**

5   **Officers Grimmond And Zamfirov For False Imprisonment, Violation Of The**

6   **Fourth Amendment And Violation Of The State Constitutional Right To Be Free**

7   **From Unreasonable Seizure, Respectively, Fail To State Claims For Relief.**

8     **A. G.J.'s Claims For False Imprisonment And His State**

9   **Constitutional Right To Be Free From Unreasonable Seizure Require The Same**

10   **Elements And Neither Claim States A Viable Cause Of Action.**

11     The facts alleged do not support a claim by G.J. for false arrest or a violation of

12   his right to be free from unreasonable seizure.  First, and from a factual standpoint,

13   neither officer Grimmond nor Zamfirov ever "imprisoned" G.J. or took him into

14   police custody.  As the complaint asserts, G.J. was hospitalized because Dr. Wang

15   stated it was medically required.  (¶ 136a.)  The officers, who lacked medical

16   expertise, were no better situated to determine medical necessity than the Joneses.

17   Moreover, even assuming the officers told the Joneses that their refusal to admit G.J.

18   would likely result in his being removed from their custody, their statement (which

19   only echoed Dr. Wang) was based on Dr. Wang's statement that further medical

20   treatment was necessary.

21     Second, from a legal standpoint, neither officer "imprisoned" G.J.  False arrest

22   and false imprisonment are not separate torts.  False arrest is but one way of

23   committing a false imprisonment.  *Asgari v. City of Los Angeles,* 15 Cal.4th 744, 752

24   (1997); *McMahon v. Albany Unified School Dist.* (2002) 104 Cal. App. 4th 1275,

25   1281.  False imprisonment requires a non-consensual, intentional confinement of a

26   person, without lawful privilege, for an appreciable length of time, however short,

27   which causes the plaintiff to suffer harm.  *Molko v. Holy Spirit Assn.*, 46 Cal.3d 1092,

28   1123 (1988).

Here, the Joneses (even though allegedly mislead by Dr. Wang) admit they consented to G.J.'s hospitalization because Dr. Wang "claimed that ... blood tests were urgent and medically necessary." (¶ 83). And, assuming the factual allegations against Dr. Wang are true (as the court must do for purposes of a motion to dismiss), it was Dr. Wang's statement that led to the hospitalization as there is no allegation that the officers had the medical expertise to "suggest" that additional tests or hospitalization were or were not medically required. In addition, there is no allegation that the officers "intentionally" confined G.J. To the contrary, the only reasonable conclusion that can be drawn from the facts as alleged, is that the officers' "suggestion" that the Joneses consent to the hospitalization was based on Dr. Wang's assessment. Thus, if the officers, like the Joneses, were misled about the medical necessity of further testing or hospitalization, the mere "suggestion" that the Joneses agree to the hospitalization could not have and did not result in the officers' "intentional confinement" of G.J.

Moreover, plaintiffs' complaint belies a "false arrest/imprisonment" claim. As the plaintiffs admit, following Mr. Jones' interview, Officer "Grimmond concluded there were no grounds for arresting Jill for child abuse, nor were there sufficient grounds for officers to take G.J. into protective custody." (¶ 77).

**B.   G.J.'s Fourth Amendment § 1983 Claim For Unlawful Seizure Also Fails To State A Viable Claim.**

As set forth above, the facts do not support such a claim as neither officer ever searched or seized G.J. Moreover, even if true, under the circumstances described in the complaint, neither the officers' "suggestion" or statements to the parents that they should admit G.J. into the hospital, nor their "escort[ing] G.J. and his parents to the ... emergency room" constitutes a seizure, particularly considering plaintiffs' allegation that Dr. Wang, Land, Ramirez, Rivas and Johnson "conspired to improperly detain G.J." and informed G.J.'s parents that if they did not comply with Dr. Wang's orders for hospitalization, G.J. would be removed from their custody for refusal of medical

**NOTICE OF MOTION AND MOTION TO DISMISS**

1   treatment. (See ¶ 136(b).)

2       The absence of probable cause is a necessary element of an unlawful seizure

3   claim. *See, e.g.*, 9th Cir. Civ. Jury Instr. 9.19 (plaintiff must prove officers lacked

4   reasonable suspicion for an investigative *Terry* detention); *id.* at 9.20 (plaintiff must

5   prove arresting officers lacked probable cause).

6       When there is probable cause, an arrest/imprisonment cannot be unlawful.

7   Probable cause exists when "under the totality of circumstances known to the arresting

8   officers, a prudent person would have concluded that there was a fair probability that

9   [the defendant] had committed a crime." *United States v. Smith*, 790 F.2d 789, 792

10  (9th Cir.1986). Similarly, it is said that "[a] police officer has probable cause to effect

11  an arrest if 'at the moment the arrest was made ... the facts and circumstances within

12  [his] knowledge and of which [he] had reasonably trustworthy information were

13  sufficient to warrant a prudent man in believing' that the suspect had violated a

14  criminal law." *Orin v. Barclay*, 272 F.3d 1207, 1218 (9th Cir.2001) (quoting *Beck v.

15  Ohio*, 379 U.S. 89, 91 (1964).) *United States v. Cortez, supra*; *Cummiskey v. Superior

16  Court,* 3 Cal. 4th 1018, 1029 (1992). Since the probable cause standard under both

17  the Unites States Constitution and California law are the same, once the Court decides

18  there is no legitimate basis for the unlawful seizure claim under Section 1983, there

19  can be no basis for a false arrest claim under California law, and vice versa.

20      Probable cause exists so long as a prudent person, considering the totality of

21  circumstances known to the arresting officer, would conclude there was a "fair

22  probability" the arrestee committed the offense. *Michigan v. De Fillipo*, 443 U.S. 31,

23  36 (1979). Probable cause leaves room for doubt and does not require conclusive

24  evidence of guilt, but deals with probabilities rather than certainties. *United States v.

25  Cortez*, 449 U.S. 411, 418 (1981). As the Supreme Court has made clear, one's

26  ultimate guilt is not what governs, since the Constitution does not guarantee that only

27  the guilty will be arrested. *Baker v. McCollan*, 443 U.S. 137, 145-146 (1979). If

28  conclusive culpability were required, Section 1983 would provide a cause of action

1 | for every defendant acquitted–indeed, for every suspect released. *Id.* at 145.   An

2 | officer is not required to investigate every claim of innocence. *Id.* at 145-46.

3 |      In other words, probable cause exists when "under the totality of circumstances

4 | known to the arresting officers, a prudent person would have concluded that there was

5 | a fair probability that [the defendant] had committed a crime." *United States v. Smith*,

6 | 790 F.2d 789, 792 (9th Cir.1986).  Similarly, it is said that "[a] police officer has

7 | probable cause to effect an arrest if `at the moment the arrest was made ... the facts

8 | and circumstances within [his] knowledge and of which [he] had reasonably

9 | trustworthy information were sufficient to warrant a prudent man in believing' that the

10 | suspect had violated a criminal law." *Orin v. Barclay*, 272 F.3d 1207, 1218 (9th

11 | Cir.2001) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964). *United States v. Cortez*,

12 | *supra*; *Cummiskey v. Superior Court*, 3 Cal. 4th 1018, 1029 (1992).

13 |      "Probable cause to arrest exists when officers have knowledge or reasonably

14 | trustworthy information sufficient to lead a person of reasonable caution to believe an

15 | offense has been or is being committed by the person being arrested. *United States v.*

16 | *Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007)(citing *Beck v. Ohio*, *supra* at 91 (1964).

17 |      Accordingly, what counts is "the totality of the circumstances known to the

18 | arresting officers [to determine whether] a prudent person would have concluded there

19 | was a fair probability that [a crime] had been committed. *United States v. Smith*, 790

20 | F.2d. 789, 792 (9th Cir. 1986).  Because probable cause is an objective standard, the

21 | officer's subjective intent is immaterial. *Lopez, supra,* 482 F.3d at 1072.

22 |      Here, the officers' alleged "seizure" of G.J., if one occurred, was because Dr.

23 | Wang informed (indeed allegedly "misled") the officers that G.J. was the victim of

24 | child abuse.  Consequently, even if G.J. was "seized," in the Fourth Amendment

25 | sense, and even if he was arrested, plaintiffs' own factual allegations provided the

26 | officers with sufficient probable cause to act as they allegedly did.

27 |      Finally, even if the factual allegations against the officers state a viable Section

28 | 1983 cause of action, the officers are entitled to qualified immunity as the law is not

**NOTICE OF MOTION AND MOTION TO DISMISS**

1   so clearly established that their alleged conduct constitutes a violation of G.J.'s

2   constitutional rights.  (See Section XI, *infra*, for discussion of qualified immunity.)

3   **VI.   The Second Cause Of Action Against Officers Grimmond And**

4   **Zamfirov Does Not Support A Claim For Intentional Infliction Of Emotional**

5   **Distress.**

6          A cause of action for intentional infliction of emotional distress requires

7   intentional and outrageous conduct directed at plaintiff.  *See, e.g., Christensen v.*

8   *Superior Court*, 54 Cal.3d 868 (1991).  To be outrageous, the conduct must be so

9   extreme that it goes beyond all possible bounds of decency usually tolerated in a

10  civilized society.  *Id.* at 903.  *See also, Davidson v. City of Westminster*, 32 Cal. 3d

11  197, 209 (1982).

12         Here, there is no allegation that any conduct directed at G.J. which by any

13  stretch of the imagination can be considered outrageous.  Officers Grimmond and

14  Zamfirov were merely fulfilling their obligation to investigate a reported instance of

15  child abuse.  Moreover, there is no allegation that the officers had any contact with

16  G.J.

17         Insofar as the parents are concerned, it appears that the sole factual allegation

18  against these officers is that they "acted in a manner" or "suggested" that Ms. Jones

19  was required by law to follow Dr. Wang's orders and take G.J. to the emergency room.

20  (See ¶¶ 83, 142(b).)  Even if true, the allegation does not support a claim for

21  intentional infliction of emotional distress, particularly in light of plaintiffs' allegations

22  that Dr. Wang, and defendants Land, Ramirez, Rivas and Johnson conspired to

23  improperly detain G.J. and threatened to remove G.J. (and in fact removed him) from

24  his parents' custody.  Moreover, given the nature and extent of G.J.'s injuries and the

25  officers' lack of medical expertise, the officers' mere "suggestion" that plaintiffs

26  follow the doctor's orders (particularly if they, like plaintiffs, were misled to believe

27  further testing was necessary) can hardly constitute the sort of conduct that so extreme

28  as to exceed all possible bounds of decency usually tolerated in a civilized society.

**VII.  The Third Cause Of Action For Negligence Against Officers Grimmond And Zamfirov Fails To State A Viable Claim Because Plaintiffs Fail To Identify Any Legal Duty Or Breach Of Duty By The Officers Towards Plaintiffs.**

Plaintiffs' Third Cause of Action for negligence hinges on the same facts that form the basis for plaintiffs' false imprisonment claim.  Plaintiffs allege: "Defendants … each had a duty not to seek the detention, either expressly or impliedly, of G.J. without legal justification." (¶ 146)  Plaintiffs claim that defendants Grimmond and Zamfirov breached their duty by seeking or assisting in the detention of G.J. by: "…acting in a manner that suggested Jill was required by law to follow Wang's order and take G.J. to the emergency room when there was no legal or medical reason for G.J. to be hospitalized." (¶ 146a).  As discussed below, even assuming the facts asserted against officers Grimmond and Zamfirov are true, the facts fail to state a negligence claim against the defendants because they fail to establish a duty or breach of that duty between the officers and plaintiffs.  Moreover, even if a duty existed, the officers are immune from liability.

**A.   The Complaint Fails To Establish The Existence Of A Duty Between The Officers And Plaintiffs.**

The existence of a "duty" is a legal determination for the court, absent relevant statutory standards.  Legal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done.  As stated in *Dillon v. Legg (1968) 68 Cal.2d 728, 73:* "The assertion that liability must ... be denied because defendant bears no 'duty' to plaintiff 'begs the essential question - whether the plaintiff's interests are entitled to legal protection against the defendant's conduct. ... [Duty] is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' (Prosser, Law of Torts [3d ed. 1964] at pp. 332-333.)"  In the landmark case of *Rowland v. Christian* (1968)

13

1   69 Cal.2d 108, 70 Cal.Rptr. 97, Justice Peters recognized that liability should be

2   imposed "for injury occasioned to another by his want of ordinary care or skill" as

3   expressed in Civil Code § 1714.

4       In determining the existence of duty in a given case, pertinent factors to

5   consider include the "foreseeability of harm to the plaintiff, the degree of certainty

6   that the plaintiff suffered injury, the closeness of the connection between the

7   defendant's conduct and the injury suffered, the moral blame attached to the

8   defendant's conduct, the policy of preventing future harm, the extent of the burden to

9   the defendant and consequences to the community of imposing a duty to exercise care

10  with resulting liability for breach, and the availability, cost, and prevalence of

11  insurance for the risk involved." *Rowland v. Christian* (1968) 69 Cal.2d 108, 113, 70

12  Cal.Rptr. 97.  When public agencies are involved, additional elements include the

13  extent of the agency's powers, the role imposed upon it by law and the limitations

14  imposed upon it by budget.  *Davidson v. City of Westminster* (1982) 32 Cal.3d 197,

15  204, 185 Cal.Rptr. 252.

16      Here, the factual allegations do not establish a "duty" on behalf of the officers

17  to protect plaintiffs from harm, or a breach of that duty.  The defendant officers were

18  called to investigate reported child abuse.  And, as they were legally required to do,

19  they investigated.  That independent investigation revealed, from the officers'

20  perspective, that there was no basis to arrest Ms. Jones or to detain G.J.  Because the

21  officers lacked medical expertise, they, like the plaintiffs, deferred to Doctor Wang's

22  medical opinions and ultimately to DCFS.  The officers had no duty to control the acts

23  of third parties such as Doctor Wang or DCFS staff.  See Government Code § 820.8;

24  *Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 203, 185 Cal.Rptr. 252.

25      **B.**    **Even If A Duty And Breach Of Duty Is Properly Pled, The Officers**

26  **Are Immune From Liability For Discretionary Acts.**

27      Government Code section 820.2 provides:  "Except as otherwise provided by

28  statute, a public employee is not liable for an injury resulting from his act or omission

1   where the act or omission was the result of the exercise of the discretion vested in

2   him, whether or not such discretion be abused." The defendant officers did not seek

3   G.J.'s detention. Even if their conduct or statements "suggested" that his parents must

4   comply with Doctor Wang's orders, such conduct, whether express or implied, is the

5   type of discretionary actions that Government Code § 820.2 protects.

6       In addition, Government Code § 820.4 provides: "A public employee is not

7   liable for his act or omission, exercising due care, in the execution or enforcement of

8   any law...." In this case, the officers were legally obligated to investigate the

9   allegation of child abuse. Plaintiffs' complaint fails to identify any facts which

10   establish that they failed to exercise due care during that investigation. There mere

11   allegation that they acted in manner suggesting that Ms. Jones was legally required to

12   follow Doctor Wang's order and take G.J. to the emergency room does not establish

13   that they did not exercise "due care." On the contrary, failing to heed Doctor Wang's

14   medical opinion that further tests were necessary, might have subjected the officers to

15   liability should G.J. have suffered further harm. (*C.f. Alejo v. City of Alhambra*

16   (1999) 75 Cal. App. 4th 1180, 1184-86, 589 Cal. Rptr.2d 768, 771-72 (police have

17   mandatory duty to investigate reported child abuse and failure to exercise reasonable

18   diligence in the discharge of that duty could result in imposition of civil liability.)

19       **VIII. The Sixth Cause Of Action Against Officers Grimmond And**

20   **Zamfirov Does Not State A Claim For A Violation Of Fourteenth Amendment**

21   **Substantive Due Process Right To Familial Association, Nor Does The Eleventh**

22   **Cause Of Action Under The State Constitution State A Claim**

23       While the courts have in some circumstances recognized a claim for substantive

24   due process violation of the right of familial association, they have only done so in

25   cases where the defendant is alleged to have removed a child from its parents' custody.

26   *E.g., Wallis v. Spencer,* 202 F.3d 1126 (9th Cir. 1999).

27       This complaint does not allege facts to support such a claim. Neither Officer

28   Grimmond nor Officer Zamfirov is alleged to have removed G.J. from his parents'

custody.  Indeed, the complaint alleges the removal was done at the behest of other individuals:  "Wang devised plan to keep G.J. at the hospital, under the guise of needing to perform critical medical tests, until a DCFS social worker arrived, whom, ..., Wang presumed would comply with her unfounded desire to remove G.J. from his parents' custody." (¶ 79); "Wang advanced her plan to detain G.J. by instructing Jill that G.J. urgently needed to have additional blood tests..."  (¶ 81, see also 83(c)); When asked if they could leave the hospital, staff advised "only Wang could provide clearance." (¶ 85); "Land ... requested that Rivas issue a hospital hold for G.J...." (¶ 87); "Wang ordered that G.J. remain at UCLA-Westwood ... overnight and ... transferred to UCLA-Santa Monica the following day." (¶ 88); "Grimmond and/or Zamfirov, ...stated that they found no grounds to detain G.J. based upon the evidence presented." (¶ 91); "DCFS issued an improper hospital hold on March 7, 2010, ..." (¶ 103);"Wang deliberately misled detectives regarding the nature of G.J.'s injuries." (¶ 116).

Moreover, under the circumstances described in the complaint, neither the officers' statements nor their "escorting G.J. and his parents to the emergency room" interfered with plaintiffs' right to familial association, particularly in light of plaintiffs' allegation that Dr. Wang, Land, Ramirez, Rivas and Johnson "conspired to improperly detain G.J." and informed G.J.'s parents that if they did not comply with Dr. Wang's orders for hospitalization, G.J. would be removed from their custody for refusal of medical treatment. (See ¶ 136(b).)

In addition, the allegations also do not rise to the level of a substantive due process violation, since even if true, the officers' conduct does not "shock the conscience." *Rochin v. California*, 342 U.S. 165 (1952).  Moreover, to the extent "escorting" constitutes a violation of any right, the right involved would arise under the Fourth Amendment, and a claim, if any, would arise directly under the Fourth Amendment, and not the Fourteenth. *Graham v. Connor*, 490 U.S. 386, 395 (1989) (where a specific provision of the Constitution provides an explicit textual source of

protection against the governmental conduct, that provision, not the more generalized notion of "substantive due process" found in the Fourteenth Amendment must be the guide for analyzing the claim.)  Here, the right to be free from unreasonable searches and seizures arises from the Fourth Amendment, not the Fourteenth.

Finally, even if the factual allegations against the officers state a viable Section 1983 cause of action, the officers are entitled to qualified immunity as the law is not so clearly established that their alleged conduct constitutes a violation of any plaintiff's constitutional rights.  (See qualified immunity discussion below.)

**IX.    Plaintiff Jill Jones' Seventh And Eighth Causes Of Action Fail To State A Viable Claim For Alleged "Coercive Interrogation."**

The Seventh and Eighth Causes of Action for alleged *"coercive interrogation"* brought against Officers Trapnell and Gladden by plaintiff Jill Jones fails to state a claim against the officers because they did not take her into custody, she was not "interrogated" by the officers, and any statements she made were not "used" against her.  As a result, she was not entitled to a *Miranda* admonition, was not entitled to the right to counsel, nor was her interview conducted while she was "in custody."

**X.    The Thirteenth Cause Of Action Against Officers Grimmond And Zamfirov Brought Under Civil Code § 43 Does Not Allege Facts Sufficient To State A Claim.**

As is true with regard to the other causes of action against Officers Grimmond and Zamfirov, the Thirteenth Cause of Action brought under California Civil Code section 43 is also insufficient.

Civil Code section 43 provides that "[b]esides the personal rights mentioned or recognized in the Government Code, every person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to his personal relations."  Cal. Civ. Code sec. 43 (West 2006).

"[T]he phrase 'right of protection from bodily restraint or harm' refers simply

1  to an individual's right to be free from physical attack or the threat thereof." *People v.*

2  *Lashley*, 1 Cal.App.4th 938, 951. Here, there is no allegation that any of the plaintiffs

3  was physically or attacked by the officers. Thus, plaintiffs cannot prevail under that

4  clause of Section 43.

5  Similarly, no plaintiff cannot show "injury to his personal relations" under the

6  final clause since the statute expressly provides that liability imposed by the section, if

7  any, is "subject to the qualifications and restrictions provided by law." The pertinent

8  qualification to liability is found in Cal. Welfare & Institutions Code section 305,

9  which provides in pertinent part: "Any peace officer may, without a warrant, take into

10 temporary custody a minor: (a) When the officer has reasonable cause for believing

11 that *** the minor is in immediate danger of physical or sexual abuse. (b) Who is in a

12 hospital and release of the minor to a parent poses an immediate danger to the child's

13 health or safety. *** "

14 As alleged in the complaint, the officers could have reasonably believed that the

15 child G.J. was either in immediate danger of physical abuse or that release to the

16 parent posed an immediate danger to the child, given the opinions they were

17 admittedly given by Dr. Wang and DCFS staff. Under Ninth Circuit precedent, the

18 officers could not have violated the plaintiffs' right to family association or the child's

19 Fourth Amendment rights even if they had been involved in the child's detention. See

20 *Doe v. Lebbos*, 348 F.3d 820, 827 (9th Cir. 2003), *overruled in part on other grounds,*

21 *Beltran v. Santa Clara County*, 514 906 (9th Cir. 2008).

22 **XI.   The Officers Are Entitled To Qualified Immunity – Plaintiffs'**

23 **Allegations Do Not Establish That The Officers Should Have Known That Their**

24 **Conduct Could Constitute A "Seizure" Of G.J., That Their Interview Of Jill**

25 **Jones Was "Coercive" And Required *Miranda* Warnings, Or That Their**

26 **Conduct Violated The Plaintiffs' Substantive Due Process Rights To Familial**

27 **Association.**

28 "Qualified immunity shields federal and state officials from money damages

1   unless a plaintiff pleads facts showing (1) that the official violated a statutory or

2   constitutional right, and (2) that the right was clearly established" at the time of the

3   challenged conduct. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)." *Ashcroft v. al-*

4   *Kidd,* 563 U.S. ___ (May 31, 2011) (Slip Opn. at p. 3).

5        The conduct of officials "violates clearly established law when, at the time of

6   the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every

7   'reasonable official would have understood that what he is doing violates that right.'"

8   *al-Kidd, supra* (Slip Opn. at 9)  The Court does not "require a case directly on point,

9   but existing precedent must have placed the statutory or constitutional question

10   beyond debate." *Id.*  Moreover, the courts are "not to define clearly established law at

11   a high level of generality[,]" *id.* (Slip Opn. at 10).  In other words, "[t]he general

12   proposition, for example, that an unreasonable search or seizure violates the Fourth

13   Amendment is of little help in determining whether the violative nature of particular

14   conduct is clearly established.  See *Saucier v. Katz,* 533 U.S. 194, 201-202 (2001)[.]"

15   *al-Kidd, supra.*

16        "Qualified immunity gives government officials breathing room to make

17   reasonable but mistaken judgments about open legal questions.  When properly

18   applied, it protects 'all but the plainly incompetent or those who knowingly violate the

19   law.'"  *Id.* (Slip Opn. at p. 12)

20        In this case, the complaint alleges facts which, at a minimum, show that the

21   officers acted reasonably in regard to G.J. and Jill Jones.  Even if, however, a

22   Constitutional violation is assumed, *arguendo*, the qualified immunity analysis

23   requires asking whether the rights were so "clearly established" as to alert a

24   reasonable official to the Constitutional parameters in light of the specific context of

25   the case.  The existence of clearly settled law is a question for the court, as is the

26   question of whether a reasonable officer could have believed the conduct to be lawful,

27   in light of clearly established law and the information the officers possessed.  *See*

28   *Hunter v. Bryant* , 502 U.S. 224, 229 (1991).

**NOTICE OF MOTION AND MOTION TO DISMISS**

1  As demonstrated in these moving papers, the information gathered by the

2  officers, taken in whole, strongly supports the conclusion that reasonably competent

3  officers could have acted as they did.  Thus, qualified immunity should be found.

4  **XII.   Plaintiffs Have Also Failed To State A Basis For Punitive Damages.**

5  There is no basis for a punitive damage award against Officers Zamfirov,

6  Grimmond, Trapnell or Gladden.  Under Rule 12(f) of the Federal Rules of Civil

7  Procedure, a court may "order stricken from any pleading . . . any redundant,

8  immaterial, impertinent, or scandalous matter.  Under this rule, courts have authority

9  to strike a prayer for relief seeking damages that are not recoverable as a matter of

10  law, including punitive damages.  See *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336,

11  337-38 (9th Cir. 1996); *Arcilla v. Adidas Promotional Retail Operations*, Inc., 488

12  F.Supp. 965 (C.D. Cal. 2007).

13  Here, the complaint details alleged misconduct by, among others, Dr. Wang, the

14  staff of the County Department of Children and Family Services, and the County

15  Counsel.  The sole complaint against Officers Grimmond and Zamfirov:  they

16  allegedly suggested to Jill Jones that she take G.J. to an emergency room for

17  evaluation.  The sole complaint against Officers Trapnell and Gladden:  they allegedly

18  escorted Jill Jones to an interview room and allowed Dr. Wang to question her without

19  advising her of the *Miranda* admonitions.

20  As shown above, the absence of viable claims against the officers precludes

21  liability.  Moreover, even if there might be some basis for a claim, qualified immunity

22  bars any recovery against the officers because the law was not too well-established

23  that an officer in the shoes of the defendant officers would have reasonably known

24  that his conduct might violate the constitution.

25  For those reasons, the prayer seeking punitive damages should be stricken.

26  **CONCLUSION**

27  For the foregoing reasons, as well as those advanced in reply and at the hearing,

28  the motion to dismiss and motion to strike should be granted.

1   DATE:  June 6, 2011

2                                                    Respectfully submitted,

3                                                    MARSHA JONES MOUTRIE
4                                                    City Attorney

5                                                         *s/ Jeanette Schachtner*

6                                                    By:_____

7                                                         JEANETTE SCHACHTNER
                                                         Deputy City Attorney

8                                                    Attorneys for Defendants,
                                                     CITY OF SANTA MONICA, SANTA
9                                                    MONICA POLICE DEPARTMENT,
                                                     ZAMFIROV, GRIMMOND, TRAPNELL,
10                                                   AND GLADDEN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION TO DISMISS**